Sandeford *vs.* Lewis *et al.*

## SANDEFORD *vs.* LEWIS *et al.*

1. There is no such thing as a non-suit in equity practice ; but if the proof introduced by the complainant will not warrant a recovery, the chancellor may dismiss the case.

(*a.*) If a case in equity has been properly dismissed for want of sufficient proof to sustain a recovery, this court will not reverse the judgment because it was called a non-suit.

2. He who seeks equitable relief must come with clean hands and without *laches*.

(*a.*) A tenant who had leased property set apart as a homestead for a woman and her children, bought a *fi. fa.* outstanding for a balance of purchase money for the land and certain other *fi. fas.*, some of them against the deceased husband ; under the first *fi. fa.* he caused the land to be levied on and sold, and he became the purchaser ; he retained enough to pay all the claims in his hand, and the balance paid to the sheriff was distributed under a money rule brought by the widow. Subsequently the purchaser filed a bill to recover the amount so distributed on the ground that an amount was due to him for improvements made on the homestead before the sale :

*Held*, that under these facts no case for equitable relief was made out, and the cause was properly dismissed.

Equity. Practice in Superior Court. Landlord and Tenant. Debtor and Creditor. Before Judge SNEAD. Richmond Superior Court. October Term, 1881.

Reported in the decision.

R. O. LOVETT ; SALEM DUTCHER, for plaintiff in error.

HABERSHAM & CAPERS ; M. P. CARROLL ; J. D. ASHTON, for defendants.

JACKSON, Chief Justice.

A bill was filed by the complainant against the defendants to recover money which had been paid by the complainant for a tract of land purchased by him at sheriff's

sale, and after the purchase money paid by him had been distributed under a money rule against the sheriff by regular judgment of the superior court.   The complainant had leased the land from the defendant, Grace Lewis, who controlled it as a homestead regularly set apart by the court of ordinary for herself and minor children, and the consideration of the loan, which was to continue five years, was the completion of the dwelling-house by the lessee, who is the complainant.   During the continuance of this lease, and when the building had been nearly completed, the complainant ascertained that a judgment lien was on premises for some one hundred and fifty dollars, the the balance of purchase money.   Thereupon, without notice or complaint to his landlord, and before any levy or threat to levy the execution by the plaintiff in execution, the complainant bought the execution for balance of purchase money, had the land levied on and sold by the sheriff, and bought it himself at the price of $825.00.   From this price which the land brought, he deducted the face of the purchase money execution, and two or three other executions, and paid over the balance, some $520.00, to the sheriff.   He gave no notice to the sheriff to retain this fund or any part of it, but without any claim at all to it paid it over to the sheriff, satisfied that the sheriff allowed him to retain the value of the purchase money *fi. fa.*, a *fi. fa.* against the deceased husband of defendant, Grace Lewis, obtained prior to the creation of the homestead estate, and other *fi. fas.* which had no lien on the homestead, not having been issued on judgments obtained by suit against that estate, so as to subject it according to law to their judgment.   The fund of $520.00 was distributed, under a money rule brought by Grace Lewis against the sheriff, to Grace, her counsel, and another creditor who became a party to the rule, by consent of all concerned, a regular valid judgment of the court so distributing it having been rendered, ordering the sheriff so to pay it out.   The other creditor got his

part in hand, the lawyers got theirs, and not having paid Grace over her share, held it for her.    The bill was brought to recover this money from Grace, her counsel, and the other distributees of the fund, as due to complainant for improvements made on the homestead, estimated at $625.00.

On the hearing, the court, the bill and facts proved having made substantially the foregoing case, non-suited the complainant and he excepted.

1. No such thing as a non-suit is known in equity practice; but if there be no equity in the bill and facts made by the proof, on the hearing the chancellor may dismiss the case for want of equity made apparent by the proof or want of sufficient proof to sustain the proceeding and justify a recovery in equity.

And though the action or judgment of dismissal be called a non-suit, and be thus misnamed, yet a reviewing court in an equity cause, looking, as equity always does, to substance and not shadows, to the thing done and not the misnomer of that thing, will affirm the deed without legitimizing the name.    62 *Ga.*, 718–725.    *Wilson vs. Hall et al.*, last term.

The question therefore is, do the facts proved entitle the complainant to relief in equity?

He that seeks relief in the court where equity reigns, must come with clean hands and without unfair conduct himself.    He must knock at her doors too without delay and *laches*.    He must have been guilty of no duplicity, but must have acted toward those whom he would arraign at her bar so justly that with an open face and a clean conscience he may demand justice from them.

Do the facts narrated above, and recited as favorably for the complainant as this record will permit, show such clean hands, clear conscience and fair conduct as commend his suit to the keen eye of a court of chancery?

Let us see.    He was in the possession of the premises leased.    Nobody was threatening to disturb that possession.    No levy was made on his leasehold.    No eviction

had taken place. There was a judgment for balance of purchase money belonging to another. The plaintiff in execution had not moved at all towards enforcing it on the land which it covered. Hearing of its existence, straightway he himself hastens, without saying a word to his landlady, to buy the execution. When he has secured it, he does not then say aught to her about its purchase; but levies it himself, through the sheriff, on the land. Still she is left in ignorance. The land is advertised and sold, and he himself buys it at the sale, his landlady still ignorant of all his conduct; and not until the sheriff's deed is in his pocket, does he hint to her that he has become the absolute owner of that trust estate which he occupied as her tenant, and thereby agreed to attorn to no other but herself. Not only so, but he buys up various smaller executions against, not the homestead which he had leased, but some against the decedent, and others which did not bind the estate he had leased, the trust estate of these minors. So that, armed with this balance of purchase money *fi. fa.* and these other *fi. fas.*, he proceeds to war upon the estate he has leased, and with these, and the claim for completing the dwelling, he proposes to the court of equity to permit him to recover the entire estate he leased for five years, and thus to get the fee to the land for a trifle more than he agreed to give for its lease for five years.

All this he proposes to do after a judgment of a court of law distributing the money, and when, to accomplish his purpose, equity must do what she always does with great reluctance, and only in a clear and strong case, and that is, annul and set aside a regular judgment at law.

We have passed by the doubt that the *fi. fa.* was for the balance of purchase money, the facts that no exhibits were made to a bill which demanded the most explicit statement of facts and exhibits of record and deeds and leases, that no clear record proof was had of the judgment sought to be set aside, that no explanation is offered

of the strange conduct of paying over money to the sheriff as a balance due to other people after all his own claims, legal and illegal, had been retained, and of now seeking to recover it back. We pass by all these and other circumstances which might be glanced at, and rest the case on the broad rule in equity, as broad and comprehensive as equity itself, that no man who has destroyed what he was trusted to preserve, and absorbed for himself, for his own enrichment, the property of minors temporarily entrusted to him on terms, can be permitted to enter a court of equity and obtain relief over the bar of a judgment at law by her aid.

Judgment affirmed.